# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHLEEN ALCALA HEBERT, | ) NO. CV 16-4901-KS |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## INTRODUCTION

Plaintiff filed a Complaint on July 5, 2016, seeking review of the Commissioner's denial of her application for Title II disability insurance benefits ("DIB"). (*See* Dkt. No. 1.) On November 29, 2016, defendant filed an Answer to plaintiff's Complaint. (Dkt. No. 13.) All parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (*See* Dkt. Nos. 9, 10, 11.) On February 22, 2017, the parties filed a Joint Stipulation ("Joint Stip.") setting forth the issues and contentions in the case. (*See* Dkt. No. 17.) Plaintiff seeks an order reversing the Commissioner's decision and

remanding this case for an award of benefits, or, in the alternative, remanding for further proceedings. (*See* Joint Stip. at 23.) Defendant requests that the decision be affirmed, or the case remanded to the Agency for further administrative development. (*See* Joint Stip. at 24-25.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 1, 2013, plaintiff filed her application for DIB, alleging a disability onset date of January 29, 2012 due to rheumatoid arthritis ("RA"). (*See* AR 20, 65.) Plaintiff was born on July 1, 1952, and at the time of her disability onset date she was 59 years old. (*See* AR 52, 62, 65.)

After initial denials, a hearing was held before an Administrative Law Judge ("ALJ") on September 8, 2014. (AR 20.) Also appearing at that hearing were a medical expert, Dr. Hugh Savage ("ME"), and a vocational expert, Dr. June Hagen ("VE"). (*See* AR 20, 32.) Plaintiff was represented at the hearing by "a non-attorney representative." (AR 20.) At the time of the hearing, plaintiff was 62 years old.[1] (AR 52.)

The ME testified that, based on his review of the record, plaintiff "has rheumatoid arthritis primarily affecting the right hand and is status-post surgical procedure involving silastic arthroplasty of the carpal joint in the right hand." (AR 36.) The ME confirmed that plaintiff has had a surgery to replace joints in her right hand, surgery on her left ankle and her right foot, and two shoulder surgeries. (AR 37.) However, the ME opined that plaintiff's conditions did not meet or equal any listed impairment. (*See* AR 37-40.) The ME testified that "I think essentially it's a pain case, Judge," and he said "this calls for an overview in a

---

[1] Plaintiff was age 59 at the disability onset date of January 29, 2012 and thus classified as a "person of advanced age" under agency guidelines. *See* 20 C.F.R. § 404.1563(d). At age 62, her age at the time of the hearing, plaintiff was considered a person "closely approaching retirement age." *Id.* at § 404.1563(d)(4).

2

case pain [sic] why the severity of the limitations indicated may not be fully apparent on the data but it may be . . . that there's far more than is mentioned in the strict data that I reviewed." (AR 39.)

The ME also testified about his opinion of plaintiff's vocational restrictions, and he said that surgeries have been "quite effective," but plaintiff could not do light work and would be restricted to sedentary work. (*See* AR 40-41.) The ME also opined that "I don't think she could do keyboard activity continuously or even frankly [sic]," and he said "I think it would be occasional." (AR 41-42.)

The VE testified that plaintiff's past relevant work ("PRW") could be classified as a "manager, personnel," which is listed in the Dictionary of Occupational Titles ("DOT") as job no. 166.117-018. (AR 48.) The VE noted that "[m]ost of the places [plaintiff] worked she described it as sedentary and the most recent one she described it as light as performed." (AR 48.)

The ALJ gave the VE a hypothetical for limited light work with "only occasional keyboarding and no forceful use [of the hands] like ripping [sic], grasping or torquing," and avoiding "[f]ine detailed work." (AR 49.) The VE opined that, with that hypothetical, plaintiff could do her past relevant jobs, noting that at one job plaintiff "did writing or typing two hours a day," and at another job plaintiff did writing or typing for "two-and-a-half hours a day." (*See* AR 49-50.) The VE opined that plaintiff's PRW involved "probably more mouse work than anything . . . [and] although there's some typing, it's not like production typing." (AR 50.) The VE also confirmed to the ALJ that her description of plaintiff's PRW was "consistent with the way . . . it's typically performed." (AR 51.)

After the ME had testified and the VE had initially testified, Plaintiff testified at the hearing. (*See* AR 51 *et seq.*) Plaintiff testified that she was 62 years old at the time of the

3

hearing, and she said she had graduated from high school and gone on to take a few junior college classes. (AR 52.) Plaintiff testified that in her last job she worked at a company called "Elite Aviation" in "HR and payroll." (AR 55-56.) Before that, she had a number of jobs, and at all of them she was a "human resources manager" and did "payroll." (*See* AR 56-57.)

She said she had surgery on the joints in her right hand in January 2012, and apparently she left her job after that. (*See* AR 52-53.) She attempted to return to work in April 2012, after her surgery, and she worked again for four or five weeks, but she had what she described as a "severe rheumatic flare-up" and "Dr. Sussman" (her treating rheumatologist) "put me out on leave," and she left her job around the end of May or early June in 2012. (*See* AR 52-53.) Plaintiff testified that Dr. Sussman told her "you can't be in an environment like that. It will create issues with your arthritis." (AR 53.) Plaintiff filed a Workers' Compensation claim with her last employer, and that claim was eventually settled, and plaintiff received a monetary payment. (AR 53; *see also* AR 59, 169.)

In response to questioning from her representative, plaintiff testified that she could only type "[a] line or two," and she said that "after a minute or two I start getting severe [] pain shooting up these two joints on my left hand [sic], first finger and second finger," and she would have to stop. (AR 57-58.) Plaintiff also said her arthritis limits her ability to use a smartphone because her hand starts hurting as she holds it, but she admitted that she has a headset, saying "I have one I could use," but she did not definitively say if she had ever used it. (*See* AR 58.) Plaintiff said that "with my joint replacement, my fingers move up and down to grasp something large," but "[t]hey don't spread sideways to reach a key like you have to do when you're typing." (AR 59.) She said she could only type for a few minutes before pain sets in. (AR 59.)

Plaintiff testified that she could not go back to the type of work she was doing as a "human resources manager" because "nowadays" it required too much typing and use of a mouse and repetitive computer use, and that aggravated the joints in her hand. (AR 54.) In particular, plaintiff said that "in my position as a human resources manager, . . . I'm required to be on the computer and typing or doing a mouse a lot during the day because I also did the payroll." (AR 54.) Plaintiff said "my doctor at one point had mentioned that he felt that the repetitive use of the computer and the mouse probably is what aggravated the joints in this hand [sic; assumedly her right hand] because it was so much worse in this hand [sic.]." (AR 54.) Plaintiff said to the ALJ: "you can look – actually see today my wrist is very swollen compared to this one. My right thumb is extremely swollen . . . that I would've had to call in sick today. There was no way I could go to work and be on a computer all day." (AR 54-55.) She said "if I sit down now to type two lines to a personal email or something, I get severe pains in these two fingers," and she said "the constant repetitive motion of a mouse will cause my wrist to swell . . . ." (AR 54.) Plaintiff testified that she has "ongoing" problems with rheumatoid arthritis flare-ups and she said "it has progressively gotten worse." (AR 55.)

After plaintiff's testimony, plaintiff's representative asked the VE whether, with "the RFC that was in the first hypothetical," and with a restriction that "the person should avoid typing," plaintiff would be able to perform her PRW, and the VE said "no." (*See* AR 62.) The VE also confirmed that anything more than "occasional typing" would be precluded. (AR 62.)

## SUMMARY OF ADMINISTRATIVE DECISION

On October 14, 2014, the ALJ issued an opinion denying plaintiff's application for DIB at step four of the five-step sequential evaluation. (*See* AR 20-26.) The ALJ found that plaintiff had not engaged in substantial gainful activity since January 29, 2012, plaintiff's alleged onset of disability date. (*See* AR 20-26.)

5

The ALJ found that plaintiff had four severe impairments: (1) rheumatoid arthritis; (2) metacarpal joint surgery of the right hand; (3) "status post 2 right shoulder surgeries"; and (4) post right and left ankle surgeries. (AR 22.)

The ALJ summarized plaintiff's testimony at the hearing by noting that she stopped working due to a stressful work environment, which caused her to have flare-ups of her rheumatoid arthritis, and she subsequently filed a Workers' Comp claim. (*See* AR 23.) The ALJ noted that plaintiff said her arthritis has gotten progressively worse, and she experiences pain when she uses a computer for even a few minutes. (*See* AR 23.) However, the ALJ found plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "not entirely credible." (AR 24.) In particular, the ALJ credited the testimony from the ME, Dr. Savage, who found that plaintiff was capable of performing a restricted range of light work. (AR 25.) The ALJ noted that plaintiff indicated in a report dated April 15, 2013 that "she was able to run errands, use the computer, perform light cooking, care for her pets, perform most of her own personal self-care functions, do the laundry, drive a car, shop, and handle her own finances." (AR 25, citing Exhibit 6E [AR 208-15].) Accordingly, the ALJ found Dr. Savage's assessment of plaintiff's abilities to be consistent with plaintiff's description of her daily functioning. (AR 25.) The ALJ said that "[t]herefore, the weight of the evidence clearly does not support the extreme limitations alleged by the claimant and her treating physicians." (AR 25.)

The ALJ went on to find that plaintiff has the residual functional capacity ("RFC") to perform light work with certain restrictions which precluded "any work involving lifting or carrying more than 10 pounds; lifting more than 5 pounds over the shoulder with the right upper extremity; more than frequent reaching, handling or fingering; more than occasional keyboarding; any fine detailed manipulative work; and any work involving forceful use of the upper extremities." (AR 23.)

Based on the VE's testimony, the ALJ found that plaintiff has the RFC to perform her PRW as a "personnel manager," DOT no. 166.117-018, which the ALJ described as "sedentary to light as actually performed." (AR 25.) The ALJ also stated that, based on the VE's testimony, plaintiff "would be capable of returning to her past relevant work as she actually performed it, and as it is generally performed in the economy." (AR 25.) The ALJ found that the VE's testimony was in accordance with the DOT. (AR 26, citing SSR 00-4p.) Thus, the ALJ denied plaintiff's application at step four of the sequential evaluation, and did not proceed to step five. (*See* AR 26.)

## DISPUTED ISSUES

The Joint Stipulation of the parties presents the following disputed issues:

(1) Whether the ALJ properly evaluated the opinion from Dr. Edward Haronian, a treating physician who saw plaintiff four times in connection with her Workers' Compensation claim; and

(2) Whether the ALJ properly evaluated plaintiff's testimony and statements about her ability to type, use a keyboard and computer, and perform her past relevant work as a personnel manager. (*See* Joint Stip. at 4.)

Plaintiff argues that the ALJ's errors warrant reversal and an immediate award of benefits, or alternatively, remand for further administrative proceedings. (Joint Stip. at 23.) Defendant maintains that the ALJ's decision is free of legal error and should be affirmed. (*Id.* at 24.) Further, Defendant contends that this case does not present the type of rare circumstance where the "credit-as-true" doctrine applies, therefore, if any reversible error is found, the appropriate remedy is to remand the matter for further proceedings. (*Id.*)

//

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

**I.** <u>**Disputed Issue No. 2: Plaintiff's Credibility About Pain, Computer Use**</u>

The Court will consider Disputed Issue No. 2 here first, since, as discussed below, the Court finds that issue dispositive.

Plaintiff argues that the ALJ improperly discounted the credibility of plaintiff's testimony and her statements in the record about her ability to do her past relevant work and, in particular, her ability to type and use a computer. (*See* Joint Stip. at 12-17, 21-22.) Plaintiff argues that the ALJ improperly and unconvincingly relied on plaintiff's activities of daily living to find that her testimony about her inability to perform her past relevant work was not credible. (*See* Joint Stip. at 14-15.) Plaintiff also complains that the ALJ also improperly rejected plaintiff's testimony because it was not supported by the medical evidence in the record. (*See* Joint Stip. at 14.) In related arguments in support of Disputed Issue No. 1, plaintiff argues that the ALJ did not properly credit notes from plaintiff's treating Workers' Compensation physician, Dr. Edward Haronian, who opined that plaintiff "should not type" and should "avoid typing." (*See* Joint Stip. at 5-7; *see also* AR 520-27.) Plaintiff argues that, because the ALJ's reasons for rejecting plaintiff's testimony about her pain and her inability to effectively type and use a computer were not sufficiently "clear and convincing," the ALJ's credibility analysis is flawed. (*See* Joint Stip. at 13-14, citing *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009).)

Defendant argues that the record shows "consistent evidence of improvement, well-controlled symptoms, and satisfaction with the progress of treatment," and defendant argues

9

that this evidence "undermine[s] plaintiff's allegations of disabling symptoms." (Joint Stip. at 118-19, citing AR 267, 364, 390, 404, 423, 502, 517, 543, and 548.) Defendant also argues that the ALJ legitimately found that plaintiff's treatment "was generally conservative," and that it was "effective in resolving her complaints." (Joint Stip. at 18, citing AR 23-24.)

### A. Applicable Law

The determination of credibility and the resolution of conflicts in the testimony are functions reserved to the ALJ. *Morgan v. Comm'r of Soc. Sec.,* 169 F.3d 595, 599 (9th Cir. 1999); *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir. 1985). *See also Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking [].").

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Lingenfelter,* 504 F.3d at 1035-36. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter,* 504 F.3d at 1036 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)).

When analyzing a claimant's subjective symptoms of pain, the ALJ may consider factors relevant to the symptoms such as, *inter alia,* the claimant's daily activities;

precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. See 20 C.F.R. § 404.1529. The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted).

However, once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter,* 504 F.3d at 1035-36; *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). "'[T]he ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).)

The claimant has the burden at step four to prove that she cannot perform her past relevant work, either as she "actually performed" it, or as it is "generally performed" in the national economy. *See Stacy v. Colvin,* 825 F.3d 563, 569-70 (9th Cir. 2016) (citing, *inter alia, Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir. 2002)); *see also* SSR 82-61. The Ninth Circuit has said that "the 'generally performed test' is designed for situations where a claimant's past job was especially demanding when compared with industry standards." *Stacy,* 825 F.3d at 569 (citation omitted). Furthermore, an ALJ may not classify a past occupation at step four "according to the least demanding function." *Stacy, id.* (citations omitted).

**B.     Analysis**

The Court finds that the ALJ has not provided sufficiently "specific, clear and convincing reasons" for discounting plaintiff's credibility and rejecting plaintiff's particular complaints here.

Because the ALJ denied plaintiff's application at step four, and found that plaintiff could perform her PRW as she actually performed it and as it is generally performed, the specific credibility questions relevant here concern plaintiff's reasons for leaving her last job, and her assertions that she cannot type, use a keyboard, or operate a computer well enough to work as a personnel manager. In other words, the salient issue is whether plaintiff can perform the typing, keyboarding, and computer demands of her PRW.

As noted, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (AR 24.) However, the ALJ found that plaintiff was "not entirely credible" for a number of reasons. Among those, the ALJ noted that Dr. Sussman, the treating rheumatologist, had commented that plaintiff's RA was "well under control with medication," and he set forth "generally benign clinical findings." (AR 25.) The ALJ opined that records from Dr. Richard Landers, plaintiff's primary care physician, showed "conservative" treatment, "mainly for various gastrointestinal complaints." (AR 25.) The ALJ also noted that plaintiff's activities of daily living showed that she plaintiff "able to run errands, use the computer, perform light cooking, care for her pets, perform most of her own personal self-care functions, do the laundry, drive a car, shop, and handle her own finances." (AR 25, citing Exhibit 6E [AR 208-15].) The ALJ relied on the opinion of the ME, Dr. Savage, saying that "his assessment is consistent with the claimant's own description of her daily functioning." (AR 25.) The ALJ further determined that an opinion from Dr. James Wickman, a State agency medical consultant, that allowed for light exertion and no more than "occasional handling and fingering," contributed to "the weight of

the evidence" that did not "support the extreme limitations alleged by the claimant and her treating physicians." (AR 25.)

The Court, however, finds that none of the reasons advanced by the ALJ are specific, clear, and convincing to show that plaintiff retains the ability to do her past relevant work and, in particular, to meet the typing, keyboarding, and computer use demands of her PRW, either as she actually performed it or as the DOT describes it.

First, the ALJ made no mention that plaintiff was malingering when she stopped working at her former job. Records show a clear history of rheumatoid arthritis in both hands, and surgery on the right hand, followed later by an RA flareup that led to plaintiff leaving her job after an unsuccessful attempt at returning to work around May or June 2012. Plaintiff's treating orthopedic surgeon, Dr. Adam Dietz, opined in November 2013 that plaintiff could *not* do "simple grasping" or "fine manipulation" with either hand, and could not use her hands for "repetitive motion tasks" such as "writing, typing, assembly, etc." (AR 426.) In January 2014, plaintiff's treating rheumatologist, Dr. Sussman, offered the same evaluation, stating that plaintiff could not do "simple grasping" or "fine manipulation" with either hand, and could not use her hands for "repetitive motion tasks" such as "writing, typing, assembly, etc." (AR 447.) Plaintiff's treating WC physician, Dr. Haronian, told her in February 2014, after her second examination with him, that she "should not type," and Dr. Haronian went on, following two subsequent examinations in April and June 2014, to tell her that she should "avoid typing." (*See* AR 525, 522, 520.)

Defendant complains that Dr. Haronian's instruction to "avoid typing" is conclusory (*see* Joint Stip. at 8-9), but in this context it is relevant to plaintiff's own subjective complaints. Moreover, the Court notes that when plaintiff's representative asked the VE at the hearing whether plaintiff could perform her PRW with a restriction to "avoid typing," the VE apparently found the question sufficiently specific to answer that such a restriction would

13

preclude plaintiff's PRW. (*See* AR 62.) Together, all of these findings support plaintiff's credibility regarding her complaints that she suffers from RA pain that precludes typing and computer use, and the ALJ did not specifically address any of them.

Furthermore, the ALJ did not challenge any of plaintiff's assertions about what she actually did at her PRW. Most significantly, plaintiff testified that her PRW was stressful, which could lead to RA flareups, and she said that at her PRW she was not only a human resources manager but she "did the payroll" as well. (*See* AR 54.) She testified that her PRW required her "to be on the computer and typing or doing a mouse a lot during the day," and the "repetitive motions" contributed to her RA flareups. (AR 54.)

The ALJ's findings about plaintiff's daily activities are also not specific, clear, and convincing reasons to undermine plaintiff's credibility about her ability to handle the typing, keyboarding, and computer requirements of her PRW as she actually performed it. The ALJ's findings that plaintiff was able to run errands, perform light cooking, care for her pets, care for herself, drive a car, and handle her own finances do not address plaintiff's ability to type or use a computer, which is the salient issue in determining whether plaintiff can return to her PRW. The ALJ's finding in her list of daily activities that plaintiff can still "use the computer" is conclusory and unsupported, and in particular does not explain how plaintiff's ability to use a computer for intermittent personal purposes would transfer to her PRW and allow her to meet the typing and keyboarding demands of her PRW. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (home activities must be transferable to work setting in order to discredit claimant's allegations of disabling excess pain). Indeed, when asked at the hearing about her PRW as she actually performed it, plaintiff explained:

> Well, in my position as a human resources manager, . . . I'm required to be on the computer and typing or doing a mouse a lot during the day because I also did the payroll. So I had to enter all the data into the payroll system which was

|   |   |
|---|---|
| 1 | all based on the internet. And my doctor at one point had mentioned that he felt |
| 2 | that the repetitive use of the computer and the mouse probably is what |
| 3 | aggravated the joints in this hand because it was so much worse than this hand. |

(AR 54.) The ALJ offers no explanation at all, much less specific clear and convincing reasons, why this testimony is not credible or how it is contradicted by the record medical evidence. In sum, the ALJ has not shown by specific, clear, and convincing reasons that plaintiff has the ability to return to her PRW and perform the typing, keyboard, and computer demands of that job as she "actually" performed it.

The ALJ also found that plaintiff could perform the personnel manager, DOT no. 166.117-018, as it was "generally performed" in the national economy. The Court's review of that DOT job description reveals that it entails, among other things, the following: plans and carries out policies relating to all phases of personnel activity; keeps record of insurance coverage, pension plan, and personnel transactions; prepares budget of personnel operations; writes notices for employees separating with cause; prepares reports and recommends procedures to reduce absenteeism; and may administer manual and dexterity tests to applicants. *See* DOT no. 166.117-018. The job description also states "[m]ay prepare budget of personnel operations, using computer terminal." *See id.* The job description also states that it is "sedentary work," for which "occasional" activity is defined as "up to 1/3 of the time," and "frequent" activity is defined as "from 1/3 to 2/3 of the time. *See id.* The job description also states that "fingering" is required "frequently," and "[e]xists from 1/3 to 2/3 of the time." *See id.*

At the hearing, the VE testified that most of plaintiff's past jobs were as a personnel manager, which the VE thought were "sedentary" jobs based on plaintiff's descriptions, and plaintiff's last, most recent job was "light as performed" per plaintiff's description. (AR 48.) The ALJ presented a hypothetical to the VE that included "occasional keyboarding." (AR

49.)  The VE stated that "the only thing that is of issue here is the keyboarding."  (AR 50.)  However, the VE noted that plaintiff had stated in her applications that at one job (apparently "Job Title No. 1" in the record) she did writing or typing for "two hours a day," and at "job two" (apparently "Job Title No. 2" in the record) plaintiff did the same thing for "two-and-a-half hours a day."  (AR 50, citing Exhibit 7E [AR 216-23].)

The Court's own review of the record reveals, however, that the ALJ has again not provided specific, clear, and convincing reasons for relying on the VE's testimony and discounting plaintiff's credibility.  The forms that the VE referred to, for "Jobs No. 1 and 2," do not support the finding that plaintiff can do "occasional keyboarding," that, is keyboarding for up to 1/3 of an 8-hour day (or, logically, about 2.66 hours in an eight-hour day).  Rather, the forms ask "how many total hours each day did you . . . [w]rite, type or handle small objects?"  (*See, e.g.,* AR 217, 219.)  "Job No. 1" apparently refers to plaintiff's last job at Elite Aviation, where she worked from March 2007 until she stopped working, and she states she did "writing, typing, or handling small objects" for 2 hours a day in that job.  (*See* AR 216-17.)  "Job No. 2" apparently refers to the job that plaintiff had before her job at Elite Aviation, a job where she worked for about five months, and where she did "writing, typing, or handling small objects" for 2-1/2 hours a day.  (*See* AR 216, 218.)  Accordingly, since the forms list writing, typing, and handling small objects together and in the alternative, it is uncertain how much of the two or two-and-a-half hours total plaintiff devoted to each of the three tasks.  In any event, it is certain that the two or two-and-a-half hours still does not rise to the 2.66 hours that plaintiff must be capable of in order to have the capacity for "occasional" typing, keyboarding, and computer use.

Furthermore, it is unclear just how much time "typing, keyboarding, and computer use" the DOT no. 166.117-018 personnel job requires.  As far as the Court is aware, the DOT job description does not list those specific categories or state time requirements for any of those specific activities.  The job description only sets forth an introductory paragraph which,

16

as noted above, describes activities such as keeping records, preparing reports, and possible use of a computer terminal. Since the ALJ did not clear up these ambiguities with the VE, the VE's testimony does not constitute the "specific, clear, and convincing" reasons needed to discredit plaintiff's complaints about the effect that her RA has on her typing and computer use.

For all of these reasons, the Court finds that the ALJ did not provide "specific, clear, and convincing" reasons for discounting plaintiff's credibility and the ALJ's denial at step four is not supported by substantial evidence in the record.

**II.     Disputed Issue No. 1:  Records from WC Treating Physician Dr. Haronian**

Because the ALJ's analysis of plaintiff's credibility was not supported by the required "specific, clear, and convincing reasons," it cannot be said that, based on the current record, that plaintiff can do her past relevant work. Plaintiff also argues in Disputed Issue No. 1 that the ALJ did not properly reject the opinion from her treating Workers' Compensation physician, Dr. Edward Haronian, who opined that plaintiff should "avoid typing." (*See* R 520-27.) Since Dr. Haronian's opinion regarding typing is only relevant now to the analysis at step four about whether plaintiff can do her PRW, Disputed Issue No. 1 is moot at present. Accordingly, the Court declines to consider Disputed Issue No. 1 at this time.

**IV.     Remanded for Further Proceedings  Is Warranted**

Because the ALJ erred at step four,  the ALJ did not proceed to a step five analysis about whether plaintiff can do other jobs that exist in significant numbers in the national economy. Further, the record is not fully developed with respect to how much typing or keyboard work the DOT no. 166.117-018 personnel job requires. As a result,  the Court cannot definitely determine that plaintiff is disabled. Thus, this case does not present the rare

17

circumstance where a remand for immediate benefits is required. Rather, the Court finds that remand for further proceedings is the appropriate remedy here. *See Treichler v. Comm'r of Soc. Sec.,* 775 F.3d 1090, 1100 (9th Cir. Dec. 24, 2014) (remand for an award of benefits is only appropriate in "rare circumstances," where record has been thoroughly developed and no useful purpose would be served by further administrative proceedings).

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: May 8, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE